*1299 OPINION.
Van Fossan:
No evidence having been introduced as to the first contention of the petitioner, the alleged erroneous mailing of the deficiency letter, it is considered to be abandoned and we go at once to the merits of the case.
In February, 1920, petitioner and the George A. Fuller Co. entered into a contract of employment by the terms of which the company agreed to pay the petitioner $20,000 per year and 10 per cent of the “net profits earned by the Wilmington office.” In the computation of the net profit the value of the shipbuilding plant was to be taken into account and the net profit increased or decreased as the plant value showed profit or loss. The 10 per cent so computed was to be paid as “ additional compensation ” and settlement was to be made in May, 1920, for the year ending April 30, 1920, and in May, 1921, for the year ending April 30, 1921. There was no provision for partial or pro rata payments.
During the year 1920 the company advanced or paid to petitioner various sums, aggregating for the year $72,166.88. During 1921 there was similarly advanced or paid the sum of $9,679.14. The company carried these sums on its books as “ accounts receivable.” Dilks testified that at the time they were'received he considered the payments as loans or advances, some of which he might have to pay back. He also testified that in preparing his tax return for 1920 he did not consider it as income for that year and accordingly made no mention of it in his return. In his return for 1921, filed in March, 1922, Dilks stated he had received in 1921 the sum of $74,704.94 “ as a gratuity ” and accordingly he did not report it as income.
During 1920 and 1921 the company set up periodically estimated profits earned on each ship and in July, 1921, sold the plant for a sum in excess of $300,000. On December 30, 1921, the company credited petitioner’s account with $87,600, being approximately $5,000 in excess of the amount theretofore carried as an account receivable due from Dilks to the company. On November 23, 1921, the company, pursuant to a resolution of its board of directors declaring the payments to its officers and employees to be gratuities, filed an amended return on behalf of a subsidiary company, setting forth that the amounts of such payments had been improperly claimed as an expense deduction on its original return. Check in payment of the difference in taxes was enclosed.
Confronted by the contract of employment, by his own adverse characterization of the payments made in 1920 as loans, and by the fact that the company treated them as accounts receivable up to December 30, 1921, it is difficult to conceive how petitioner can now contend, as he does, either that the payments were a gratuity or con *1300 stituted income in 1920. The first alternative may be readily disposed of. The contract is the best evidence of the intention of the parties; it is clear and unambiguous in language. It provided for the payment of 10 per cent of the net profits as “ additional compensation.” The single fact that the amount was contingent on the success of the plant operations did not alter the character of the payment when earned and ascertained. The payments to Dilks were not gratuities.
Nor do we believe they were income in 1920. By the terms of the contract the payment was to be a sum equal to 10 per cent of the “ net profits earned,” in the computation of which the profit or loss on the plant was to be considered. Obviously the plant value for such a purpose could not be determined until the conclusion of operations. Further, the settlement was to take place in May of each year for the preceding year. By way of definition the contract states that “ earned ” profits means “ actual net profits ” taken into account on the company’s books and under its customary rules. The additional compensation depended on the net result of all of the company’s activities at the Wilmington plant. These provisions all tend to demonstrate that the payments in 1920 were not payments of the additional compensation provided by the contract. At the time they were made the actual net'profits could not be determined. Losses suffered on the Eagle Oil Transport Co. contract were yet to be ascertained and the plant value had not been determined. The books showed only estimated profits. There was no provision for partial payments. We believe petitioner’s characterization of the payments as loans or advances which might have to be paid back was peculiarly apt. By treating the payments as accounts receivable, i. e., debts of Dilks due to the company, the company expressed its concurrence in the view that they were loans or advances and not payments under the contract. We are of the same opinion. This conclusion disposes of petitioner’s alternative contention as to 1920. There remains to consider when, if ever, the payments became income to the petitioner.
As pointed out above, when these sums were advanced to Dilks the company charged them against him and carried the amounts as an account receivable. This treatment obtained throughout 1920 and until December 30, 1921, when the ships being completed, the plant sold and net profits ascertainable, the company credited to Dilks’ account the sum of $81,500. As $82,446.02 had already been paid into Dilks’ hands as loans or advances, this crediting entry completed the transaction of payment of this amount of additional compensation under the contract. (The difference between the sum credited and the sum advanced, approximately $5,000, was not paid to Dilks until January, 1922.) The account receivable was offset by the credit entry and that which had been a loan or advance was *1301 converted into a payment for services. Petitioner being on a cash basis, at that moment the payment became income for the year 1921.
Petitioner’s return for 1921 shows that no return was made of any amount on account of the additional compensation provided by contract. At this time it was explained away as a gratuity. The evidence before us establishes that $82,446.02 was received in that year. Petitioner’s income should be increased by this amount.
At the close of the testimony and before the conclusion of the hearing counsel for the respondent requested the Board to find that the return for the year 1921 was fraudulently made and that a penalty for fraud should be imposed. As indicated above, at the time he filed his return for the year 1921 petitioner made a disclosure of the fact that he had received $74,708.94, which he was not returning as income, claiming the same to have been paid him as a gratuity. Though we have held him to be in error in his characterization and treatment of the sum so received,'we are of the opinion that the respondent, on whom rested the burden of proof on this issue, has not established fraud. The disclosure, in our judgment, negatives any intention on the part of the petitioner to file a false and fraudulent return with intent to evade tax and, on the contrary, evidences an honesty of belief that the sum received was not taxable. The charge of fraud is disapproved.

Judgment will be entered under Bule 60.